NEGRO HARRIETT *vs.* EDWARD RIDGELY.—*December*, 1837.

Upon a petition filed by a slave, stating her right to freedom at a future time, and asking in the meantime, that the party in possession might be compelled to give security not to remove her from the state, accompanied with a suggestion that he was about to do so; it was *held* that the court had no power to interfere, and that upon demurrer or suggestion the petition would be dismissed.

Upon such a petition, the question of a petitioner's right to freedom is not presented; although the defendant in his answer tenders, and the petitioner joins issue upon that right.

An executor who has returned a slave in his inventory of the estate of his testator, is not therefore estopped from shewing, in resisting the slave's right to freedom, under the will of his testator, that he was the property of another.

Such inventory is not conclusive upon the executor, or any one else; upon proof of error, he may get credit in the Orphans' court, or when called to account, by the creditors, or distributees of his testator.

When a petition is filed for freedom, the question to be tried, is the petitioner's right thereto; and not the right of the defendant to hold him in slavery.

APPEAL from *Baltimore* city court, petition for freedom.

The petitioner alleged that by the codicil to the last will and testament of *Eleanor Dall*, deceased, bearing date the 19th day of October, 1829, duly proved and recorded, she

devised and directed as follows: " I hereby manumit, enfranchise and set free my negro woman *Maria,* and her two children, *Benjamin* and *Harriett,* the freedom of said children to take effect when they shall have respectively attained the age of twenty-one years." The petitioner further represented that *Harriett,* manumitted to be free as aforesaid, is now in jail, and claimed by *Edward Ridgely,* executor of the last will and testament of the said *Eleanor Dall,* as his slave for life. The petition then suggested that the said *Ridgely* intended to remove the said negro *Harriett* from the state of *Maryland*—prayer for a subpœna, and that he give security not to remove said girl, now about 17 years of age, entitled to freedom at the age of 21 years; and that he shew cause why he should not give security not to remove the said *Harriett* out of the state.

The answer of *Edward Ridgely* alleged that the said negro *Harriett,* never was the property or in the possession of *Mrs. Dall,* the testatrix; but at the time of her death, was the property of *J. C. Gittings;* that the said *Harriett* was born the slave of *James Sterrett,* and was never out of his possession during the life of *Mrs. Dall,* but that he had conveyed her to *J. C. Gittings,* in trust, for the wife of the said *J. Sterrett;* that it is true that after the date of the said conveyance, *J. Sterrett* mortgaged the said negro *Harriett* to *Mrs. Dall,* but this respondent submits that that mortgage conveyed no title to *Mrs. Dall;* all of which is respectfully submitted, and that the said negro *Harriett* is not a free woman, as in the said petition above is alleged, and of this he puts himself upon the country, &c.

At the trial of this cause the petitioner gave in evidence the certificate of the register of wills of *Baltimore* county, dated 1st March, 1834, under the seal of the Orphans' court of *Baltimore* county, that it had been proved by such testimony as was satisfactory to him, that the bearer, *Negro Maria,* was the identical person mentioned in *Mrs. Dall's* will.

And also proved a mortgage from *James Sterett*, dated 24th April, 1823, to *Eleanor Dall*, for the said negro with others, conditioned to pay a sum of money on or before the 1st January, 1826, which mortgage was duly acknowledged and recorded.

The defendant then proved that on the 29th February, 1820, the said *James Sterett*, in consideration of a relinquishment of dower by his wife, *Maria*, conveyed the said negro with others to a certain *James C. Gittings*, for the sole and separate use of his wife, *Maria*, which was also duly acknowledged and recorded; and that on the 24th February, 1822, the said *James Sterett* conveyed all his personal property to *Charles Sterett Ridgely* for the separate use of his wife, *Maria Sterett*, which was also duly acknowledged and recorded.

The defendant then produced *Eleanor Ridgely*, who being duly sworn, gave the following testimony: "I am the niece of *Mrs. Dall*, was frequently with her at her house in town; never knew *Harriett*, the petitioner, until the year 1830, after my aunt's death; she was never, to my knowledge, in my aunt's possession. I have always heard that *Harriett* lived with her grandmother in the country, who was *Mr. Sterett's* slave, but permitted by him to live with her son who was a free man. Shortly after my aunt's death, *Mrs. Sterett* came to town to my brother's house, and said to me that she wanted to see about *Harriett*, as she was her property. I communicated this claim to my brother very recently. *Maria*, the mother of this girl, the petitioner, lived in *Mrs. Dall's* family as her slave, and survived her mistress. *Maria*, the mother, after *Mrs. Sterett* made her claim, said she did not want her to have her child, as her mother had brought her up and found her in every thing. *Mr. Sterett* had never done any thing for them. The petitioner was brought from the country to town to be appraised in *Mrs. Dall's* estate in July, 1830." It was also agreed that *Edward Ridgely* was the executor of *Mrs. Dall*, that he had the petitioner appraised as part of her estate. That the petitioner was never in the possession of *Mrs. Dall*, but lived until *Mr. Ridgely* took

possession of her at the time of the appraisement with her grandmother, who was a slave of *Mr. Sterett's*, but lived with her son, a free man. It was also proved on the trial of this cause, that the said *Edward Ridgely* on 23d June, 1836, committed the said negro, *Harriet*, to the jail of *Baltimore* county as his slave; and that whatever interest, if any, *Mrs. Dall* had in said negro, vests in the said *Edward*, as residuary legatee under her last will and testament. It was further proved at the trial, that at the time of filing of the petition in this cause, the said *Edward Ridgely* intended to sell the said negro girl as a slave for life, out of the state of *Maryland*, and it is admitted that this intention on his part still exists.

The city court (*Brice, Ch. J. Nesbit and Worthington, J's*) thereupon adjudged the petitioner to be a slave, when she appealed to this court.

This cause was argued before ARCHER, DORSEY, and SPENCE, Judges.

WALSH, for the appellant, contended, for the reversal of the judgment on the following grounds:

1. That *Mrs. Dall* was at the time of the execution of her will, competent to confer freedom upon *Negro Harriet*, she having at the time a title to her: because there is no proof in the cause of the acceptance of the trusts by the parties in the two deeds relied upon by the defendant, and even if said trusts were accepted, the devise by *Mrs. Dall* to the defendant, connected with the fact of *Harriet* being appraised as the property of *Mrs. Dall*, and taken in possession by the defendant, operated as a foreclosure of her mortgage.

2. That the defendant having accepted the devises contained in the will is not competent to set up any title in opposition to the will; and he would have been bound in the event of the trustees making any demand, to plead limitations to protect the freedom of the negro. The proof shows that such a plea could have been maintained.

3. That the defendant by procuring the supposed title of *Mrs. Sterett* or her trustees, violated his duty as executor of said will, and omitted entirely the requisites of the act of 1817, ch. 112.

4. That the proof in the cause shews that he claims the girl as a slave for life belonging to himself, and had at the time of the filing of this petition the intention to sell her out of the state, and there is no proof of any bill of sale in compliance with the provisions of the act of 1817.

5. That the sale to *Ridgely* was so far as he is concerned, fraudulent and void, being in fact the sale of a negro for a term of years without the requisite demanded by said act of 1817. Another deed of all his personal property to *Charles Sterett Ridgely*, which is also for a valuable consideration in trust for the separate use of the said *Maria Sterett.* After the execution of both these deeds, *James Sterett* on the 20th April, 1823, by deed of mortgage, mortgaged *Negro Harriet* to *Eleanor Dall*, to secure payment of a certain sum of money on or before the 1st of January, 1826, with a clause in the mortgage deed under which the mortgagor was to retain possession of the property until default should be made, in the payment of the sum of money on the 1st January, 1826.

*Eleanor Dall* never at any time took possession of *Harriet*, who continued to live with her grandmother, who was a slave to *Mr. Sterett*, but lived with her son, a free man, until after the death of *Mrs. Dall.* The court therefore erred in their judgment in directing the negro to be restored to the defendant, because the judgment should have been either in favour of the claim of the petitioner to freedom, or that the said negro should be sold for the benefit of the Mayor and City Council of Baltimore.

6. The deed to *James Gittings* vested no title in him, not being acknowledged before an officer having authority to take the acknowledgment, at least the acknowledgment on its face does not state the official character of the officer before whom it was made. He was not described as judge or justice.

He cited: *Allender vs. Riston,* 2 *Gill and John.* 98. *Seimer vs. Seimer and wife, Ib.* 105. 1817, *ch.* 112, *sec.* 4 *and* 5. *Coale vs. Harrington,* 7 *Har. and John.* 154.

H. EVANS, contended on behalf of the appellee.

1. That *Harriet* did not belong to *Mrs. Dall.*

2. That *Mrs. Dall* had no right to manumit *Harriet.*

3. That *Harriet* is not now free.

4. That under the act of assembly under which the appellant filed her petition, 1817, ch. 112, sec. 5, no appeal lies to this court; that is, that this court has no jurisdiction of this case in any shape, but all objections as to the mode of bringing the matter before them, if in any mode it can be brought up are expressly waived. He cited: 1715, *ch.* 44, *sec.* 2. 1796, *ch.* 67, *sec.* 13. *Ford vs. Philpot,* 5 *Har. and John.* 315. 1812, *ch.* 117.

DORSEY, Judge, delivered the opinion of the court.

The proceedings in this case have been most irregularly conducted, and under any modification which has been given to them, it is difficult to conceive upon what grounds a successful result to the petitioner's application could have been anticipated. The petition upon its face presents no such case as would have justified the interference of a court of justice, and either upon demurrer or suggestion to the court, it ought to have been dismissed. None of the provisions of the act of 1817, ch. 112, which have been relied on, can be invoked to the support of such a petition. Assuming the truth of all its statements, and the absence of all the other proof to be found in the record, and there is no law in this state which in such a case would warrant an interference with the rights of the slaveholder in executing the designs imputed to him by the petition.

As if foreseeing the utter inability of sustaining this petition under the act of 1817, on which it was predicated, the petitioner's counsel promptly availed themselves of an opportunity afforded by the appellee, and join issue upon the peti-

tioner's right to freedom—thus abandoning all the grounds assumed by the petition, and asserting a right wholly inconsistent with its allegations. The judgment of the court could not have been otherwise than against her, as conceding her to have been the absolute property of *Mrs. Dall*, by the instrument of her emancipation, she was a slave for three years yet to come. But supposing that obstacle to be removed, the decision of the court must have been the same. By the proof in the cause the petitioner was not the slave of *Mrs. Dall*, and therefore derived no title to freedom under her will. But it is insisted that the appellee being the executor of *Mrs. Dall*, and having returned the petitioner as her slave in the inventory of her effects, is estopped from shewing that the appellant was the slave of another. There is no such estoppel in the case. The executor is not concluded by the inventory, nor is it conclusive upon any body else—he may at any time upon proof of the error obtain a credit in his settlements with the Orphans' court for the appraisement of the petitioner, or he may obtain the same allowance when called on to account either by the creditors or distributees of his testatrix. The privilege of establishing the same fact cannot be denied him in the present proceeding.

It might be inferred from the argument in behalf of the appellant, that the court below were called on to decide upon the rights of the appellee to hold the petitioner in slavery, and not the title of the petitioner to freedom. Such is not the issue. The question is, is the petitioner free? No matter how destitute of right may be the claim of him who now seeks to detain her in bondage, if found to be the slave of any body, the judgment of the court must be against her.

JUDGMENT AFFIRMED.